IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 05-cv-00755-LTB-PAC

COLORADO FIRST CONSTRUCTION CO., a Colorado Corporation,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;
ALPHONSO JACKSON, in his capacity as Secretary of the United States Department of
Housing and Urban Development, and
MIDLAND LOAN SERVICES, INC., a Delaware corporation,

    Defendants.
_____

ORDER
_____

    Defendant Midland Loan Services, Inc., ("Midland") moves to dismiss the promissory estoppel claim by Plaintiff Colorado First Construction Co., ("CFC"). For the reasons discussed below, Midland's motion is GRANTED.

## I.  BACKGROUND

    The underlying dispute in this case involves the claims of a general contractor, CFC, against a federal agency, the Department of Housing and Urban Development ("HUD") and a lending company, Midland, for money CFC claims it is owed for work it performed for a real estate developer, Platte View Farm, LLC, ("PVF,") not a party in this case, for the construction of an apartment complex known as Platte View Farms Apartments in Brighton, Colorado.

    As alleged in CFC's complaint, the facts of this case are as follows. Platte View Farms Apartments was a HUD-sponsored project, operating according to HUD guidelines and procedures and using HUD approved forms and documents. Under this HUD framework, HUD

provided federal loan guarantees to a lender, Midland. Midland entered into a Building Loan Agreement ("Loan Agreement") with a developer, PVF. PVF in turn entered into a Construction Contract Cost Plus ("Construction Contract") with a contractor, CFC.

While separate documents and signed by different parties, these agreements were all part of a unified HUD process and contained some inter-related provisions. The Construction Contract, HUD form 92442-A, between CFC and PVC, states that CFC will be paid based on its estimated costs, plus a fee of $266, 222, but not to exceed $13,676,256. Payment will be in monthly installments based on progress on the project and costs incurred, but minus 10% of each installment retained as "hold-back." This hold-back is to be paid to CFC once the contract work is finished and various verification and compliance steps are completed.  The contract states that CFC "understands that the work under this contract is to be financed by a Building loan . . . and that the terms of said loan are set forth in a Building Loan Agreement" between PVC and Midland. This provision goes on to state that:

> "The Contractor further understands that said Building Loan Agreement provides that, in the event of the failure of the Owner to perform its obligations to the Lender thereunder, the Lender may as attorney-in-fact for the Owner, undertake the completion of the project in accordance with this contract. In the event the Lender elects not to undertake such completion, the Contractor's obligations under this contract shall terminate."

Construction Contract, Article 9 (D.), (Compl.,Ex. B, Page 3).

Under the Loan Agreement, HUD Form 92441, between PVF as borrower and CFC as lender, PVF will apply monthly for advances of mortgage proceeds corresponding to the amounts requested by CFC in the Construction Contract. This provisions uses the precise verbatim language as the Construction Contract.  Also mirroring the provisions in the Construction

Contract, the Loan Agreement states that if PVF defaults, Midland may either terminate the project or choose to continue it. If Midland chooses to continue the project, Midland will act as PVF's attorney in fact, with full power to complete the project, the power "to pay, settle or compromise all existing bills and claims which may be liens against the mortgaged property, or as may be necessary or desirable for the completion of the project, or for clearance of title" and the power "to do any and every act which the borrower might do in its own behalf."

Both of these documents were signed on June 19, 2002. During the course of construction, Midland used its own contractor to validate CFC's progress before making monthly transfers to PVC. On September 23, 2003 HUD performed its final inspection of the project, verifying that it had been completed according to HUD requirements. The Construction Contract prescribes the conditions necessary for a contractor to complete the contract and receive the 10% hold back. CFC states that it has completed all of these requirements, and that neither Midland nor HUD dispute that CFC has completed the project. CFC asserts that it is owed $1,415,475.69 plus accrued interest (the "amount owed,") most of which constitutes hold-back.

Because PVF would not pay CFC the amount owed, on September 19, 2003 CFC commenced an arbitration proceeding against PVF. On October 11, 2004 PVF and CFC entered into a stipulated award under which PVF was to pay CFC $1,600,000. PVF did not comply with this stipulated award, and on February 11, 2005 CFC obtained a court order from the Adams County, Colorado District Court making the stipulated award an order of the Court. On or about February 11, 2005, PVF filed for voluntary bankruptcy under Chapter 11. CFC has tried unsuccessfully to obtain the money owed from Midland and from HUD.

CFC filed this action April 25, 2005, making claims against Midland and HUD for (1) recovery as a third party beneficiary of the agreements between Midland and PVC and HUD's Firm Commitment letter backing advances by Midland to PVC; (2) promissory estoppel; (3) negligent misrepresentation (only against HUD); (4) breach of implied in-fact contract; (5) unjust enrichment, quantum meruit and (6) negligent loan administration.

On June 22, 2005 Midland filed a motion to dismiss CFC's promissory estoppel claim, under Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id*. In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. DISCUSSION

In Colorado a claim of promissory estoppel requires satisfying four elements: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Berg v. State Bd. of Agriculture,* 919 P.2d 254, 259 (Colo. 1996).

Midland's motion to dismiss CFC's promissory estoppel claim challenges only the first element. Midland contends that it made no promise to CFC, necessarily defeating CFC's claim of promissory estoppel. Midland states, and CFC does not dispute, that no individual document governing this transaction contain a specific promise by Midland to CFC. Midland and CFC are not joint signatories to any of the documents, and no document specifies a right of CFC against Midland or an obligation by Midland to CFC. Midland argues that this absence of a promise is fatal to CFC's claim of promissory estoppel.

CFC contends that the documents governing this transaction, viewed in their totality, do contain a promise by Midland to CFC. CFC asserts that all of these documents were created, signed and executed under a HUD-regulated and HUD-required framework, mandating mutually interlocking and interdependent relationships among the parties. HUD provides loan insurance to lenders to finance projects, but only if the lender, the developer and the contractor agree to follow a specified HUD process using standard HUD forms. This process includes protection to the contractor in the event of a default by the owner, in the form of the lender either cancelling the project or assuming the owner's role in the project. Midland was aware of these interlinking connections and understood its role as a critical player in the transaction. Midland knew that its commitments to PVF and PVF's commitments to CFC were vital links in a chain essential to completion of this project.

Moreover, the Loan Agreement and the Construction Contract contained identical language describing how CFC would be paid, the nature of the hold-back provision, and how CFC's requests for payment would be processed. CFC relies heavily on the provision in Midland's contract with PVF enabling Midland to assume PVF's role in the event of PVF's

default. Since Midland concedes that PVF is in default, and Midland did not cancel the project, then under its agreement with PVF it is responsible for PVF's obligations to CFC.

This argument and these factual assertions, even if accepted as true, are insufficient to support a claim of promissory estoppel. Missing in CFC's description of the web of interlocking contractual commitments and the HUD-imposed regulatory framework is any evidence of a promise by words or deed by Midland to CFC. Even if the intertwined contracts and HUD procedures made CFC rely to its detriment, promissory estoppel still requires a promise by Midland, and it must be a promise by Midland to CFC. CFC has not cited any cases, and I am not aware of any, that state that there can be promissory estoppel absent a promise to a promisee.

CFC wants me to interpolate a direct promise between two parties from a web of interconnecting relationships. I decline to do this. Midland's signing of a contract with PVF, even under the broad contours of a HUD project in which CFC was also a participant, does not constitute a promise by Midland to CFC. CFC does not allege that Midland ever stated directly to CFC that Midland guaranteed PVF's obligations to CFC. Similarly, a provision in CFC's contract with PVF does not constitute a promise by Midland to CFC. Absent any assertion that PVF was acting as Midland's agent when it signed the Construction Contract with CFC, PVF's statements regarding Midland's obligations to PVF, contained in a separate contract to which CFC was not a party, are not a promise by Midland to CFC.

In sum, the allegations by CFC, presumed true, do not show a promise sufficient to support a claim of promissory estoppel.

Therefore, it is so ordered that

1) Midland's motion to dismiss CFC's claim of promissory estoppel (Docket # 7) is GRANTED.


**DONE and ORDERED,** this ___6th___ day of February, 2006 at Denver, Colorado.

                                         s/Lewis T. Babcock
                                         United States District Chief Judge