IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 05-cv-00755-LTB-PAC

COLORADO FIRST CONSTRUCTION CO., a Colorado Corporation,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; ALPHONSO JACKSON, in his capacity as Secretary of the United States Department of Housing and Urban Development, and
MIDLAND LOAN SERVICES, INC., a Delaware corporation,

    Defendants.

_____

ORDER
_____

Defendants United States Department of Housing and Urban Development and the Secretary of the United States Department of Housing and Urban Development, Alphonso Jackson, (collectively "HUD") move to dismiss the complaint by Colorado First Construction Co., ("CFC") for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), to refer CFC's claims to the bankruptcy court under D.C.COLO.LCivR 84.1 and for failure to join an indispensable party under Fed. R. Civ. P. 12(b)(7). For the reasons discussed below, defendants' motion is GRANTED.

## I.  BACKGROUND

The underlying dispute in this case involves the claims of a general contractor, CFC, against a federal agency, HUD, and a lending company, Midland Loan Services, Inc. ("Midland") for money CFC claims it is owed for work it performed for a real estate developer, Platte View

Farm, LLC, ("PVF"), not a party in this case, for the construction of an apartment complex known as Platte View Farms Apartments in Brighton, Colorado.

As alleged in CFC's complaint, the facts of this case are as follows. Platte View Farms Apartments was a HUD-sponsored project, developed according to HUD guidelines and procedures. Under this HUD framework, HUD provided federal loan guarantees to a lender, Midland. Midland entered into a Building Loan Agreement ("Loan Agreement") with a developer, PVF. PVF in turn entered into a Construction Contract Cost Plus ("Construction Contract") with a contractor, CFC.

These agreements, while separate documents and signed by different parties, were all part of a unified HUD process and contained inter-related provisions. The Construction Contract, HUD form 92442-A, between CFC and PVF, states that CFC will be paid monthly based on its estimated costs, plus a fee of $266, 222, but not to exceed $13,676,256. These monthly payments are subject to the approval of HUD and Midland. PVF will withhold ten percent of each monthly installment and pay CFC this "hold back" when CFC completes the contract work and obtains any necessary state or local government approvals, and after HUD issues a Permission to Occupy designation. The Contract contains an acknowledgment by CFC that "the work under this contract is to be financed by a Building loan" as described in the Building Loan Agreement between PVF as borrower and Midland as lender.

Under the Loan Agreement, HUD Form 92441, PVF applies monthly for advances of mortgage proceeds corresponding to the amounts CFC requests in the Construction Contract. This provision uses the precise verbatim language as the Construction Contract regarding the monthly advances and the hold back. While HUD is not a signatory to the Loan Agreement, PVF

acknowledges in the Loan Agreement that Midland is receiving mortgage insurance from HUD. The loan agreement also states that if PVF defaults on its loan any funds not yet advanced to PVF will automatically be assigned to Midland, and Midland may complete the project as PVF's attorney-in-fact, with authority to pay all existing bills and claims.

CFC asserts that neither HUD nor Midland dispute that it has completed all of the contractual and regulatory requirements for receiving the hold back. CFC claims that it is owed $1,415,475.69 plus accrued interest (the "amount owed,") most of which constitutes hold back. CFC contends that PVF has refused to pay CFC the amount owed, and so on December 19, 2003 CFC commenced an arbitration proceeding against PVF. On October 11, 2004 PVF and CFC entered into a stipulated award under which PVF was to pay CFC $1,600,000. PVF did not comply with this stipulated award, and on February 11, 2005 CFC obtained a court order from the Adams County, Colorado District Court making the stipulated award an Order of the Court. On or about February 11, 2005, PVF filed for bankruptcy under Chapter 11 of the Bankruptcy Code.

CFC has also tried unsuccessfully to obtain the money owed from Midland and from HUD. CFC recounted to HUD in a seven page letter February 22, 2005 the history of this transaction and why CFC believes it is entitled to payment of the hold back from HUD. According to an affidavit of Christopher Downs, counsel to CFC, CFC had several conversations with HUD officials to try to obtain the hold back; all unsuccessful.

CFC filed this action April 25, 2005, making claims against Midland and HUD for (1) recovery as a third party beneficiary of the agreements between Midland and PVF and of HUD's Firm Commitment letter to Midland backing its advances to PVF; (2) promissory estoppel,

asserting that it relied on HUD and Midland's commitment to pay the hold back; (3) negligent misrepresentation (only against HUD), claiming that HUD represented to CFC that it would pay CFC in full if CFC completed its contract performance; (4) breach of implied in-fact contract, since HUD and Midland breached their obligation to CFC to pay the hold back; (5) unjust enrichment/quantum meruit, since Midland and HUD used and enjoyed the benefits of CFC's work, and (6) negligent loan administration, asserting that HUD and Midland knew or should have known that the loan proceeds were insufficient to pay for the project.

On July 6, 2005 HUD filed this motion to dismiss CFC's tort claims for lack of subject matter jurisdiction, to transfer the case to bankruptcy court as a related proceeding under D.C.COLO.LCivR 84.1, or in the alternative, to dismiss the case for inability to join PVF as an indispensable party under Fed. R. Civ. P. 12(b)(7). On August 9, 2005 Midland filed a motion joining those portions of the motion relating to transfer to bankruptcy court and dismissal under Rule 12(b)(7). In an Order dated February 6, 2006, I dismissed CFC's promissory estoppel claim against Midland.

Both HUD and CFC refer to related pleadings in the United States Bankruptcy Court for the District of Colorado. HUD's motion states that PVF's Statement of Financial Affairs lists CFC as a creditor holding a claim of $1.6 million, and shows Midland holding a secured claim of $18,348,255.00, with HUD as the assignee of the claim. PVF's financial disclosure statement, excerpts of which are attached as an exhibit to HUD's reply brief, claims that CFC did not meet the conditions precedent to the Stipulated Award, and so PVF does not consider the award to be binding. PVF also argues the Court Order is void because it filed for bankruptcy on February 11, 2005, the same day on which the District Court entered its Order. PVF's excerpted financial

disclosure statement states that on June 10, 2005 CFC filed an adversary proceeding in the bankruptcy court against PVF, HUD and Midland, seeking a judgment to equitably subordinate the claims of Midland and/or HUD to the claims of CFC in the Bankruptcy case. According to HUD, CFC's complaint in bankruptcy court makes many of the same factual allegations as here: (1) promissory estoppel, (2) breach of implied in fact contract, (3) negligent misrepresentation and (4) negligent loan administration. Midland has filed a motion to dismiss this complaint under Fed. R. Bankr. P. 7012, which PVF has joined.

## II.  STANDARD OF REVIEW

HUD files this motion under Fed. R. Civ. P. 12(b)(1) for "lack of jurisdiction over the subject matter."  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed and doubts are to be resolved against federal jurisdiction. *United States ex rel. King v. Hillcrest Health Center, Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001), *cert. denied*, 535 U.S. 905, 122 S. Ct. 1205, 152 L. Ed. 2d 143 (2002).  Accordingly, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof.  *Penteco Corp. Ltd. Partnership – 1985A v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keller,* 442 F.2d 674, 677 (10th Cir. 1971).When a defendant contests jurisdiction, the plaintiffs have "the burden of proving jurisdiction exists."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.

1995). "Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff[s] need only make a prima facie showing" of jurisdiction  *Id*.

I discuss the standards governing Fed. R. Civ. P. 19 and D.C.COLO.LCivR 84.1 when I address those substantive arguments, below.

### III.  DISCUSSION

A.  Should CFC's Claims be Dismissed Under the Federal Tort Claims Act for Failure to Exhaust Administrative Remedies?

HUD moves to dismiss CFC's claim 3 (negligent misrepresentation) and claim 6 (negligent loan administration) for failure to meet the procedural requirements of the Federal Tort Claims Act ("FTCA"). The requirements of FTCA govern all tort claims against government agencies. 28 U.S.C. § 2679(a) & (b). The FTCA requires plaintiffs to exhaust administrative remedies before filing a claim in federal court. 28 U.S.C. § 2675. Failure to comply with the procedural requirements of the FTCA deprives a federal court of subject matter jurisdiction. *Duplan v. Harper,* 188 F.3d 1195, 1199 (10th Cir. 1999). HUD argues that CFC has not exhausted its remedies on these tort claims and that therefore this court lacks subject matter jurisdiction. CFC contends these claims are not governed by FTCA, and that it has exhausted its administrative remedies.  HUD also asserts that the FTCA in all cases bars claims of  misrepresentation. 28 U.S.C. § 2680(h).  I will address each of these arguments.

1.  Are CFC's Claims Tort Claims Cognizable Under the FTCA?

CFC asserts that these claims are not tort claims but in fact sound in contract, and so are not governed by the restrictions of the FTCA.  CFC argues that its claims are rooted in the web of

contracts and agreements written and governed by HUD. CFC characterizes its claims as stemming from "HUD's failure to perform under the terms of HUD's own loan underwriting and loan administration guidelines," and so are in the nature of a "breach of an implied contract term." CFC cites *Claxton v. Small Business Administration of U.S.,* 525 F. Supp. 777, 782 (S. D. Ga., 1981) for the proposition that a tort is not governed by the FTCA when it "is based entirely upon the breach by the government of a promise made by it in a contract, so that the claim is in substance a breach of contract claim, and only incidentally and conceptually also a tort claim."

CFC's argument is implausible. CFC's claims 3 and 6 both use the word "negligent" and state the elements needed to satisfy a claim of negligence. CFC already asserts claims in contract that embrace any interpretation of these claims as contract claims – third party beneficiary, unjust enrichment and implied contract. As contract claims, claims 3 and 6 are redundant. In Colorado, a plaintiff may make a claim for negligent misrepresentation and breach of contract arising from the same transaction. *Keller v. A.O. Smith Harvestore Products, Inc.* 819 P.2d 69, 72 (Colo. 1991). This appears to be what CFC has done.  CFC's claims 3 and 6 appear to reflect a perfectly valid litigation strategy of pleading alternative causes of action.

However, having plead these claims alternatively as tort and contract actions, CFC cannot now re-characterize the tort claims to avoid the FTCA.  If CFC seriously wishes me to consider its tort claims as contract claims, then the claims are redundant and subject to a motion to strike under Fed. R. Civ. P. 12(f), which can be "raised at the court's initiative at any time."  Striking a claim is an extreme measure, and this could not be the result CFC sought when it argued that claims 3 and 6 are contract claims.  I therefore find and conclude that CFC's claims 3 and 6 sound in tort, are not redundant with CFC's contract claims and are subject to the FTCA.

2.	Did CFC Exhaust its Administrative Remedies as Required by the FTCA?

Assuming that these are properly tort claims, CFC must exhaust FTCA's administrative requirements before filing suit in federal court. 28 U.S.C. § 2675. A plaintiff must present the claim to a federal agency and receive written notice of denial by certified or registered mail. *Id.* The written notice of the claim must "sufficiently (describe) the injury to enable the agency to begin its own investigation," and provide "a sum certain damages claim." *Bradley v. United States ex rel. Veterans Admin.,* 951 F.2d 268, 270 (10th Cir. 1991). In addition, the written notice must specify the tort claim against the agency. Written evidence of a breach of contract claim by itself does not meet FTCA notice requirements. *Industrial Constructor Corp. v. United States Bureau of Reclamation,* 15 F.3d 963, 968 (10th Cir. 1994).

HUD asserts that CFC did not receive a formal written denial as specified in the statute. CFC does not dispute this, but provides significant evidence that HUD has in fact denied its claims. CFC claims, and HUD does not deny, that HUD officials made clear orally that HUD will not grant CFC the relief it seeks. In addition, HUD has sent a letter to a CFC subcontractor stating specifically that HUD will not pay CFC the hold back.  The record does not address whether HUD sent this letter by registered or certified mail.

 FTCA's notice requirements are construed narrowly, since congressional waivers of sovereign immunity are presumed to be limited. *Bradley,* 951 F.2d at 270. CFC does not deny that it never received a written denial meeting the specific requirements of § 2675. Moreover, § 2675(a) allows plaintiffs to file suit after six months if the agency does not provide a formal written denial. In this case, CFC neither waited six months nor received  a proper denial. For these reasons, CFC has not complied with FTCA's procedural requirements.

HUD argues that CFC's claim has an additional flaw. While the February 22, 2005 letter may have provided written notice, and notice of damages sought, it provides notice only of contract claims, not tort claims. The language of the letter and CFC's later communications all focus on HUD's obligations to CFC under the contracts and other documents governing the Platte View project. Neither the letter nor the subsequent communications described in the Downs' affidavit suggest that CFC claimed that HUD misrepresented facts or obligations to CFC or that HUD was negligent in managing a contract. Since CFC has not provided written notice to HUD of a tort claim, the February 22, 2005 letter and the later communications do not meet the FTCA notice requirements. So, even if I did find that HUD properly denied CFC's request for relief, CFC's claims would nevertheless fail.

HUD also contends that the FTCA specifically bars CFC's claim of misrepresentation. Under 28 U.S.C. § 2680(h) the waiver of sovereign immunity allowing suits against the federal government does not apply to "any claim arising out of . . . misrepresentation." CFC does not respond to this argument. Based on this clear statutory language, I find and conclude that CFC cannot make a claim against HUD for misrepresentation.

I therefore conclude that the FTCA bars CFC's claims 3 and 6 against HUD. Claim 3 is barred in its entirety under § 2680(h). Claim 6 is barred for failing to exhaust administrative remedies, and is dismissed without prejudice as to CFC's right to re-file this claim once it has properly exhausted its administrative remedies as required by the FTCA.

B.  Should CFC's Claims be Referred to Bankruptcy Court as "Related to" a Bankruptcy action?

HUD, joined by Midland, argues that CFC's claims must properly be referred to the bankruptcy court, as matters relating to PVF's Chapter 11 bankruptcy action. Federal district courts may refer to a bankruptcy judge "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).  Under District of Colorado local rules, "All cases under Title 11, United States Code, and all proceedings arising under Title 11 or arising in or related to cases under Title 11, shall be automatically referred to the bankruptcy judges of this district pursuant to 28 U.S.C. § 157 without further order." D.C.COLO.LCivR 84.1.

A civil proceeding is "related" in bankruptcy when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir. 1990). A proceeding "related to" a bankruptcy proceeding could have been brought in a district or state court in the absence of a bankruptcy case. *Id.*  A related proceeding need not be against the debtor or his property, but is related "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in anyway, thereby impacting on the handling and administration of the bankruptcy estate. *Id.*

HUD contends that CFC's action to recoup the money owed is related to the bankruptcy proceeding because it involves the same claims, parties and transactions, and under numerous scenarios could impact the bankruptcy estate.  For example, since CFC is a creditor of PVF for $1.6 million, its recovery in this action could undermine its effort to recover in the bankruptcy action, leaving more of the estate for other creditors. Conversely, this court's determination that CFC does not have a right to recovery could effect CFC's chances of recovery in the bankruptcy proceeding. This court could also make HUD pay the hold back directly to PVF, which would

increase the funds available for distribution in the bankruptcy proceeding.

CFC does not dispute that its claims are related to the bankruptcy proceeding. CFC's sole objection is that referring this case to bankruptcy court would violate CFC's Seventh Amendment right to a jury trial. Citing *Granfinanciera, S.A. v. Norberg,* 492 U.S. 33, 41 (1989), CFC argues that it is entitled to a jury trial for any claims involving legal rights, such as its claims here. Since a bankruptcy court can only conduct a jury trial if all of the parties agree, 28 U.S.C. § 157(e), referring this case to bankruptcy court is improper.

HUD makes several arguments in response. HUD states that it consents to a jury trial for any claims that appropriately merit a jury trial, and that it possesses a letter from Midland's counsel similarly consenting. This *ex parte* letter from Midland to HUD does not constitute express consent, and obviously does not represent consent by CFC.

HUD also argues that referring the case to the bankruptcy court at this stage of the proceeding does not deprive CFC of a jury trial. Under local court rules, for non-core proceedings, a bankruptcy judge submits proposed findings of fact and conclusions of law to the district court judge. D.C.COLO.LCivR.84.1(D). The district court judge retains *de novo* review. 28 U.S.C. § 157(c)(1). HUD argues, persuasively, that I may refer this case for resolution of pre-trial issues without depriving CFC of any jury trial rights to which it may be entitled.

HUD also contends that CFC is not entitled to a jury trial in this case because the United States' waiver of sovereign immunity did not subject it to jury trials. Since I am referring this case to the bankruptcy judge but retaining the power to order a jury trial in district court, I decline at this time to address whether CFC has a Seventh Amendment right to a jury trial against HUD. I note that whatever sovereign immunity defenses HUD may have, these do not extend to Midland.

11

I also do not address HUD's argument that CFC's claim of quantum meruit/unjust enrichment is an equitable claim not entitled to jury trial.

For the reasons outlined above, I find and conclude that CFC's claims are related to a matter in bankruptcy. Under 28 U.S.C. § 157 and D.C COLO.LCivR 84.1(A) and (D) I refer CFC claims 1, 2, 4, and 5 against HUD and claims 1, 4, 5 and 6 against Midland (claim 2 against Midland has been dismissed) to the bankruptcy judge. However, I refer them only for the purpose of making proposed findings of fact and conclusions of law. I retain *de novo* review of the bankruptcy judge's recommendations, and retain the right to order a jury trial consistent with CFC's Seventh Amendment rights.

C.  Should CFC's claims be dismissed for failure to join an indispensable party?

HUD, joined by Midland, argues alternatively that CFC's claims should be dismissed under Fed. R. Civ. P. 12(b)(7) & 19 because PVF is an indispensable party that cannot be joined.

Determining whether an action should be dismissed for failure to join an indispensable party under Fed. R. Civ. P. 19 is necessarily a two part inquiry. *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). "The court must first determine under Rule 19(a) whether the party is necessary to the suit and must therefore be joined if joinder is feasible." *Id.* "If the absent party is necessary but cannot be joined, the court must determine, under Rule 19(b), whether the party is indispensable," and the suit must be dismissed. *Id.* The parties agree that PVF, because of its status as a debtor in bankruptcy, cannot be joined. However, CFC and HUD disagree as to whether PVF is a necessary party under Rule 19(a) and an indispensable party under Rule 19(b).

Under Rule 19(a) a party is necessary if

12

> (1) in [PVF's] absence complete relief cannot be accorded among those already parties, or (2) [PVF] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [PVF's] absence may (I) as a practical matter impair or impede [PVF's] ability to protect that interest or (ii) leave [existing parties] subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest."

HUD asserts three reasons why PVF is a necessary party: (1) failure to join PVF subjects HUD to potentially conflicting claims because PVF could sue HUD under PVF's contract with Midland, (2) in PVF's absence complete relief cannot be afforded to all of the parties because PVF, as the party contractually bound to receive hold back from Midland and to provide hold back to CFC is a "crucial link" in the web of contracts at issue in this case; and (3) failure to join PVF potentially impairs PVF's interests since a ruling in this case could impact the distribution of the disputed hold back or interpret a disputed contract provision.

I find these arguments unpersuasive. The key to determining whether a party may be subject to multiple obligations is "whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* 64 (3d ed. 2001). Here, HUD's concerns about a suit by PVF is highly speculative. HUD has no evidence to suggest a suit is likely. PVF did not have a contract with HUD and has not stated that it believes HUD is liable to it for the hold back. On the contrary, PVF states in its bankruptcy disclosure that it owes $1.6 million to CFC, and does not reveal any claim against HUD or Midland.

Similarly, HUD's "crucial link" argument relies on the proposition that multiple parties to a contract are necessary parties under Rule 19(a). However, it does not follow that PVF is a necessary party to a suit between CFC and HUD merely because it was a participant in this web

13

of transactions. PVF, CFC and HUD were not joint signatories to a contract. CFC's claims are for quasi-contract, third party beneficiary and unjust enrichment, not for breach of actual contract. Also, all of these contracts were generic forms prepared as part of a standardized HUD procedure. Under these circumstances, PVF is not a crucial link and is not a necessary party.

HUD also asserts that PVF's rights could be negatively affected by continuing this case without PVF. However, this argument also is based on the theory that this court's interpretation of one or more of the HUD documents in this case may somehow constrain PVF in a hypothetical future suit against HUD. As discussed above, this is entirely too uncertain a scenario to justify finding PVF a necessary party.

Even assuming PVF is a necessary party under Rule 19(a), I still must find PVF to be an indispensable party under Rule 19(b) before I can dismiss this case under Rule 12(b)(7). I consider several factors in making this determination: whether a judgment would be prejudicial to the absent party or to the parties present, whether the court can fashion relief to reduce or avoid prejudice, whether the court can render an adequate judgment in the absence of this party and whether the plaintiff will have an adequate remedy if the action is dismissed. Fed. R. Civ. P. 19(b). Applying these principles, I find and conclude that PVF is not an indispensable party.

HUD's principle argument, underlying each of these factors, is that maintaining this action without PVF will prejudice either PVF or HUD in the event PVF makes a claim against HUD for the hold back. As discussed above, this concern is highly speculative. HUD contends that if it cannot join PVF to this action, it will be unable to seek contribution from PVF in the event HUD must pay CFC. HUD cites *Federal Resources Corp. v. Shoni Uranium Corp.,* 408 F.2d 875, 878 (10th Cir. 1969) to support the proposition that a defendant's need to seek contribution from an

absent party is adequate basis for dismissal under Rule 19(b). However, in *Federal*, the absent party was the co-partner of the defendant where the plaintiff was suing for a breach of a contract with the partnership. *Id.* The absent defendant's shared liability in that circumstance, unlike here, was not speculative. Also, if this scenario does unfold, HUD may still seek contribution from PVF as part of the bankruptcy proceeding.

HUD asserts that under the fourth factor I should evaluate whether another forum is available where the plaintiff, if dismissed, could join all the necessary parties. HUD suggests that bankruptcy court provides this forum, but the authority HUD cites states only that a state court provides an acceptable alternative forum to a federal court. *Id.* at 877-878. HUD does not cite any authority, and I am not aware of any, stating that a bankruptcy court can provide an adequate remedy for a plaintiff sufficient to justify dismissal from federal court when such a dismissal is not otherwise required.

I therefore find and conclude that PVF is neither a necessary party under Rule 19(a) nor an indispensable party under Rule 19(b).

Therefore it is so ordered that,

CFC's claim 3, negligent misrepresentation, is DISMISSED for lack of subject matter jurisdiction, and

CFC's claim 6, negligent loan administration, is DISMISSED WITHOUT PREJUDICE, as to HUD for lack of subject matter jurisdiction, and

CFC's claims 1, 2, 4 and 5 against HUD and claims 1, 4, 5 and 6 against MIDLAND are REFERRED to the Bankruptcy Court for the District of Colorado, pursuant to D.C.COLO.LCivR 84.1.

**DONE and ORDERED,** this    15th    day of February, 2006 at Denver, Colorado.

                                              s/Lewis T. Babcock
                                          United States District Chief Judge